

SO ORDERED,

Judge Edward Ellington
United States Bankruptcy Judge
Date Signed: August 22, 2016

The Order of the Court is set forth below. The docket reflects the date entered.

# IN THE UNITED STATES BANKRUPTCY COURT FOR THE
## SOUTHERN DISTRICT OF MISSISSIPPI

IN RE:                                                                   CHAPTER 13
WILLIAM S. ROBERTS                                        CASE NO. 0306146EE
SARA A. ROBERTS


JAMES L. HENLEY, JR., TRUSTEE

VS.                                                         ADVERSARY NO. 1500051EE

PATRICK C. MALOUF, AND PORTER
& MALOUF, P.A.


Hon. Jeffery P. Reynolds                          Attorneys for Chapter 13 Trustee
jeff@jprpa.com
Carson H. Thurman
carson@jprpa.com
200 South Lamar Street, Suite 1050-S
Jackson, MS 39201

Hon. John H. Dollarhide                          Attorneys for Patrick C. Malouf and
john.dollarhide@butlersnow.com                          Porter & Malouf, P.A.
J. Mitchell Carrington
mitch.carrington@butlersnow.com
Post Office Box 6010
Ridgeland, MS 39157

Hon. James L. Henley, Jr.                                                 Chapter 13 Trustee
Post Office Box 31980
Jackson, MS 39286-1980

Edward Ellington, Judge


## MEMORANDUM OPINION

**THIS MATTER** came before the Court on the *Motion to Dismiss* (Adv. Dkt. #18) filed by Patrick C. Malouf and Porter & Malouf, P.A. and the *Response in Opposition to Defendants' Motion to Dismiss* (Adv. Dkt. #22) filed by James L. Henley, Jr., Chapter 13 Trustee. Having considered same and the respective briefs filed by the parties, the Court finds that the *Motion to Dismiss* (Adv. Dkt. #18) filed by the Patrick C. Malouf and Porter & Malouf, P.A. should be granted in part, denied in part, and deferred in part.

## FINDINGS OF FACT[1]

The matter before the Court is the *Motion to Dismiss* (Adv. Dkt. #18) (Motion to Dismiss) filed by Patrick C. Malouf and Porter & Malouf, P.A. "For purposes of ruling on a motion to dismiss for want of standing, both the trial and reviewing courts must accept as true all material allegations of the complaint, and must construe the complaint in favor of the complaining party." *Warth v. Seldin*, 422 U.S. 490, 501, 95 S. Ct. 2197, 2206, 45 L. Ed. 2d 343 (1975).

On September 4, 2002, a complaint was filed in the Circuit Court for the First Judicial District of Hinds County, Mississippi, styled *Pate, et. al. v. Minnesota Mining & Manufacturing*

---

[1]These findings of fact and conclusions of law constitute the Court's findings of fact and conclusions of law pursuant to Federal Rule of Bankruptcy Procedure 7052. To the extent any of the following findings of fact are determined to be conclusions of law, they are adopted, and shall be construed and deemed, conclusions of law. To the extent any of the following conclusions of law are determined to be findings of fact, they are adopted, and shall be construed and deemed, as findings of fact.

*Comp., et. al.* (Civil Action No. 25-CI-1:02-01140) (Hinds County Action).  The Hinds County Action was filed by ninety-three (93) plaintiffs, one of which was William S. Roberts.  Patrick C. Malouf and Porter & Malouf, P.A. (collectively, Malouf) filed the Hinds County Action and represented William S. Roberts.

On October 22, 2003, William S. Roberts (Debtor) and Sara A. Roberts (collectively, Debtors) filed a petition for relief under Chapter 13 of the United States Bankruptcy Code.  James L. Henley, Jr. (Trustee) was appointed the Chapter 13 Trustee.  Neither the Debtor's *Schedules*[2] nor the *Statement of Financial Affairs*[3] disclosed that the Debtor was a plaintiff in the Hinds County Action.

The *Order Confirming the Debtor's Plan, Awarding a Fee to the Debtor's Attorney and Related Orders* (Dkt. #12) (Confirmation Order) was entered on January 7, 2004, and provides in pertinent part:

> [T]he court finds that:
>
>      . . . .
>
> B.  The plan as presented for confirmation (hereinafter referred to as "the plan") complies with the provisions of Chapter 13 of Title 11 of the United States Code and the other applicable provisions of said Title;
>
>      . . . .
>
> D.  The plan has been proposed in good faith and not by any means forbidden by law;

---

[2]*Schedule B - Personal Property*, Case No. 0306146EE, Dkt. #4, p. 5 of 28, Line 20, Oct. 29, 2003.

[3]*Statement of Financial Affairs,* Case No. 0306146EE, Dkt. #4, p. 23 of 28, Question 4a, Oct. 29, 2003.

E.  The value, as of the effective date of the plan, of property to be distributed under the plan on account of each allowed unsecured claim is not less than the amount that would be paid on such claim if the estate of the debtor were liquidated under Chapter 7 of Title 11 of the United States Code on such date;

. . . .

G.      b.  the plan provides that all of the debtor's projected disposable income as disposable income is defined in 11 U.S.C. § 1325(b)(2) 1 *(sic)* to be received by the debtor in the three year period beginning on the date that the first payment is due under the plan will be applied to make payments under the plan.

. . . .

IT IS ORDERED THAT:

. . . .

4.  All property shall remain property of the estate and shall vest in the debtor only upon dismissal, discharge, or conversion.  The debtor shall be responsible for the preservation and protection of all property of the estate not transferred to the Trustee.[4]

Attached to the Confirmation Order is the Debtors' *Chapter 13 Mini-Plan* (Confirmed Plan). In the Debtors' Confirmed Plan, the Debtors state that their unsecured creditors hold claims totaling approximately $47,872.00, and that they are paying zero (0) to their unsecured creditors.[5]

In the Hinds County Action, Malouf filed a *Motion to Enforce and Accelerate Settlement*[6] (Hinds County Motion) on October 8, 2004.  In the Hinds County Motion, Malouf states that the parties had entered into a confidential settlement, but that the defendants had "paid only a portion

---

[4]*Order Confirming the Debtor's Plan, Awarding a Fee to the Debtor's Attorney and Related Orders,* Case No. 0306146EE, Dkt. #12, pp. 1-2, Jan. 7, 2004.

[5]*Id.* at 3.

[6]*Complaint for Turnover of Property, Declaratory Judgment and Equitable Relief,* Adv. Case No. 1500051EE, Dkt. #7, Exhibit 3, Aug. 6, 2015.

of the claimants pursuant to the agreement."[7]   Malouf then requests that the state court order the defendants to immediately comply with the settlement.

On March 5, 2007, an *Agreed Order of Dismissal of All Claims by Plaintiffs*[8] was entered in the Hinds County Action.  The order dismissed the Hinds County Action with prejudice.

The Debtors completed their plan payments in January of 2007.  The Trustee filed his *Final Report and Account* (Dkt. #32) (Final) on June 20, 2007.  The Final shows that a total of $57,831.93 in allowed unsecured claims were filed in the Debtors' case and that zero (0) was paid to the allowed unsecured creditors.  Further, the Final shows that the Debtors received a refund in the amount of $1,133.31.[9]

On June 22, 2007, the *Discharge of Debtor After Completion of Chapter 13 Plan* (Dkt. #33) and the *Final Decree/Order Closing Case* (Dkt. #34) were entered.

On October 31, 2011, a motion was filed to reopen the Debtors' bankruptcy case to disclose that Sara A. Roberts had settled a product liability claim against a drug manufacturer.  The *Motion for Approval of Proposed Settlement and Distribution of Proceeds from Personal Injury* (Dkt. #40) (Sara's Settlement) was also filed on October 31, 2011, and states that Sara A. Roberts' use of a pharmaceutical  product while her Chapter 13 case was open resulted in a personal injury.  Sara's Settlement further states that she had settled with the pharmaceutical company and requested that the settlement be approved along with attorneys' fees and costs.

The case was reopened on December 22, 2011, and an order was entered on December 27,

_____

[7]*Id.* at 1.

[8]*Id.* at Exhibit 4.

[9]*Final Report and Account*, Case No. 0306146EE, Dkt. #32, pp. 1-3, June 20, 2007.

2011, approving Sara's Settlement.  The Trustee received the settlement funds ($64,210.37) on January 9, 2012.  On January 10, 2012, a *Motion to Approve Payment of Fees and for Disbursement of Money* (Dkt. #54) was filed and noticed to all creditors.  On February 6, 2012, an order was entered (Dkt. #59) approving the payment of attorneys' fees and costs and the payment to Sara A. Roberts.

The Court notes that the Debtors did not amend their schedules to disclose the existence of Sara A. Roberts' personal injury claim.  Nor did Sara Roberts amend her claim of exemptions to claim the settlement funds as exempt.  Regardless, after the payment of attorneys' fees and costs, the Trustee disbursed $30,474.82 to Sara A. Roberts.[10]  The Debtors' bankruptcy case was again closed on August 3, 2012. (Dkt. #64).

On May 27, 2015, the Trustee filed a *Motion to Reopen Chapter 13 Case* (Dkt. #72) because the Trustee believed that the Debtor, William S. Roberts, had settled an undisclosed personal injury lawsuit during the pendency of his Chapter 13 case.  The *Order on the Trustee's Motion to Reopen Chapter 13 Case [Dkt. No.: 72]* (Dkt. #73) was entered on June 1, 2015.

The above-styled adversary proceeding was commenced on July 31, 2015, with the filing of the *Complaint for Turnover of Property, Declaratory Judgment and Equitable Relief* (Adv. Dkt. #1) by the Trustee.  While not styled as amended, the Trustee filed an amended complaint on August 6, 2015, titled *Complaint for Turnover of Property, Declaratory Judgment and Equitable Relief* (Adv. Dkt. #7) (Amended Complaint).  Malouf is the only defendant.[11]

---

[10]*Chapter 13 Standing Trustee's Final Report and Account*, Case No. 0306146EE, Dkt. #62, p. 1, July 3, 2012.

[11]The Trustee states in his Amended Complaint that the Debtor, William S. Roberts, died in 2011. Pursuant to Federal Rule of Bankruptcy Procedure 1016, "if further administration is possible and

In the Amended Complaint, the Trustee alleges that the Hinds County Action was property of the Debtors' bankruptcy estate; that Malouf's representation of the Debtor was not approved by this Court; and that the settlement entered into by Malouf on the Debtor's behalf was never approved by this Court and is therefore void. Consequently, the Trustee requests that the Court order Malouf to turnover any and all settlement funds it received on behalf of the Debtor, including attorneys' fees and expenses, to the Trustee.

As noted previously, Malouf filed its Motion to Dismiss on October 30, 2015. In the Motion to Dismiss, Malouf alleges that the Amended Complaint should be dismissed pursuant to several subsections of Federal Rule of Bankruptcy Procedure 7012.[12] Malouf contends that the Amended Complaint should be dismissed: (1) under Rule 12(b)(1) for lack of subject matter jurisdiction; (2) under Rule 12(b)(6) for failure to state a claim upon which relief can be granted; and (3) Rule 12(b)(7) for failure of the Trustee to join the settling defendants in the Hinds County Action.

After the final brief was filed, the Court took the matter under advisement.

## CONCLUSIONS OF LAW

### I. Jurisdiction

For the reasons discussed below, this Court has jurisdiction of the subject matter and of the parties to this proceeding pursuant to 28 U.S.C. § 1334 and 28 U.S.C. § 157. This is a core proceeding as defined in 28 U.S.C. § 157(b)(2)(A), (E) and (O).

---

in the best interest of the parties, the case may proceed and be concluded in the same manner, so far as possible, as though the death or incompetency had not occurred."

[12]Federal Rule of Civil Procedure 12 is made applicable to bankruptcy proceedings pursuant to Federal Rule of Bankruptcy Procedure 7012. For purposes of this Opinion, the Court will refer to Rule 7012 as Rule 12.

## II.  Rule 12(b)(1)

The Court of Appeals for the Fifth Circuit has held that before turning to the merits of a case, a court must first address a challenge to its subject matter jurisdiction.  *See Ramming v. United States,* 281 F.3d 158, 161 (5th Cir. 2001) (stating that a court must address Rule 12(b)(1) challenge to jurisdiction before dealing with other Rule 12 motions).

> A complaint must be dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) "when the court lacks the statutory or constitutional power to adjudicate the case." *Home Builders Ass'n of Miss., Inc. v. City of Madison, Miss.,* 143 F.3d 1006, 1010 (5th Cir. 998).  Standing is a required element of subject matter jurisdiction and is therefore properly challenged on a 12(b)(1) motion to dismiss.  *See Xerox Corp. v. Genmoora Corp.,* 888 F.2d 345, 350 (5th Cir.1989).  The burden of proof on a Rule 12(b)(1) motion to dismiss is on the party asserting jurisdiction.  *See Strain v. Harrelson Rubber Co.,* 742 F.2d 888, 889 (5th Cir. 1984).

> The Court has the power to dismiss under Rule 12(b)(1) based on any of [three separate bases:] (1) the complaint alone, (2) the complaint supplemented by undisputed facts in the record, and (3) the complaint supplemented by the court's resolution of disputed facts. *Williamson v. Tucker,* 645 F.2d 404, 413 (5th Cir.1989). When a defendant raises a "facial attack" on subject matter jurisdiction, one based on the complaint alone or the complaint supplemented by disputed facts, "the plaintiff is left with safeguards similar to those retained when a 12(b)(6) motion to dismiss for failure to state a claim is raised—the court must consider the allegations in the plaintiff's complaint as true." *Id.* at 412.

> When considering a "factual attack," one based on the complaint and some disputed fact or facts, however, a court's authority under Rule 12(b)(1) extends well beyond that conferred by Rule 12(b)(6) or [even] Rule 56—the court has the additional power to resolve factual issues in order to determine if it has jurisdiction to hear the case. *Id.* at 412–13.  If a court rests its decision upon the resolution of disputed facts, it must both "identify and explain the factual determinations it has made." *Id.* at 413–14.  Furthermore, before dismissing a case under Rule 12(b)(1) based upon its factual determinations, a court must first afford the plaintiff "an opportunity for discovery and for a hearing that is appropriate to the nature of the motion to dismiss." *Id.* at 414.

*SR Partners Hulen, LLC v. JPMorgan Chase Bank, Nat'l Ass'n,* No. 3:10-CV-437-B, 2011 WL 2923971, at *3 (N.D. Tex. July 21, 2011).

The Motion to Dismiss is not a *factual attack* on the Amended Complaint–indeed, all parties agree that the Debtor failed to disclose a pre-petition cause of action; that the lawsuit was settled during his Chapter 13 plan; and that Malouf disbursed funds to the Debtor and received attorneys' fees and expenses from the settlement.  Malouf asserts that the Amended Complaint should be dismissed because the Trustee lacks standing to pursue the turnover of the funds.

The Court of Appeals for the Fifth Circuit addressed a similar situation in *Flugence v. Axis Surplus Ins. Co. (In re Flugence),* 738 F.3d 126 (5th Cir. 2013).  In *Flugence*, the debtor filed a Chapter 13 case in 2004.  The plan was confirmed, and the debtor subsequently was injured in a car accident in 2007.  The debtor filed suit against the personal-injury defendants in March of 2008.  The debtor completed her plan payments and received her discharge in November of 2008.  The debtor, however, never disclosed the cause of action to the bankruptcy court.  When the personal-injury defendants discovered that the debtor had filed bankruptcy and had not disclosed the lawsuit, they moved to have the debtor's bankruptcy case reopened and sought to have the debtor judicially estopped from pursuing the undisclosed lawsuit.

In finding that judicial estoppel applied to prevent the debtor from pursing the cause of action on her own behalf, the Fifth Circuit found that "the law on disclosure [is] well settled: Chapter 13 debtors have a continuing obligation to disclose post-petition causes of action."[13]  The Fifth Circuit further held that while the debtor was estopped from pursuing the cause of action, the bankruptcy court correctly applied its holding in *Reed v. City of Arlington,* 650 F.3d 571 (5th Cir. 2011) (en banc) when the bankruptcy court found that the Chapter 13 trustee was not estopped from pursuing the cause of action for the benefit of the creditors.  The Fifth Circuit stated:

---

[13]*In re Flugence,* 738 F.3d at 129 (footnote omitted).

*Reed,* 650 F.3d at 573, holds generally that, where a debtor is individually estopped from pursuing an undisclosed claim, "absent unusual circumstances, an innocent trustee can pursue [the claim] for the benefit of creditors." The remedy affirmed in *Reed* provided that, though the debtor was personally estopped, the trustee "would be free to [pursue the claim for recovery] for distribution to [the debtor's creditors," and "[a]ny remaining funds after distribution would be refunded to the [defendants], and not to [the debtor]." *Id.* That holding was intended both to "deter dishonest debtors, whose failure to fully and honestly disclose all their assets undermines the integrity of the bankruptcy system," and to "protect[ ] the rights of creditors to an equitable distribution of the assets of the debtor's estate." *Id.* at 574. Nothing in *Reed* speaks to liability limitations[14] of the sort the personal-injury defendants seek, and for good reason.

The basic thrust of the defendants' argument is that it would be inconsistent with the goals of bankruptcy to allow the trustee to pursue a claim where, as here, it would disproportionately benefit the attorneys over the creditors. Although the argument may be superficially appealing, if the personal-injury defendants were entitled to the sort of limitation they seek, then such declarations would tend to "thwart one of the core goals of the bankruptcy system—obtaining a maximum and equitable distribution for creditors." *Id.* at 577. Attorneys might not be willing to take on the case with a dim hope for recovery, so the creditors would collect nothing.

The Bankruptcy Code adequately addresses limitations on attorneys' fees. Lawyers and other professionals may be employed "on any reasonable terms and conditions of employment, including on a retainer, on an hourly basis, on a fixed or percentage fee basis, or on a contingent fee basis," and the court must approve such compensation as reasonable. 11 U.S.C. §§ 328, 330. Because the trustee is a fiduciary of the estate, he has a duty to ensure that the compensation arrangements made with attorneys and others are in the best interests of the creditors. In short, bankruptcy law already imposes limitations on professional compensation.

In *Reed,* we rejected the notion that innocent creditors should be punished for the debtor's failure to comply with disclosure rules. "Judicial estoppel is an equitable doctrine, and using it to land another blow on the victims of bankruptcy fraud is not an equitable application." *Reed,* 650 F.3d at 576 (emphasis and citation omitted). That wrongful tortfeasors would be favored over innocent creditors by the mere happenstance of the debtor's independent non-disclosure turns equity on its head. Providing the personal-injury defendants the windfall they seek is neither necessary nor desirable.

---

[14]The personal-injury defendants wanted their exposure limited to the amount of the debtor's debt to her creditors. The Fifth Circuit rejected this argument.

*In re Flugence*, 738 F.3d at 131-32 (footnotes omitted).

Since the Debtor had received the settlement proceeds long before the Trustee discovered the existence of the settlement, the facts of the case at bar differ slightly from *Flugence* in that judicial estoppel was not raised by any of the defendants in the Hinds County Action. The underlying holding, however, is directly on point to the case at bar. *Flugence* clearly holds that the Debtor had a duty to disclose the existence of the pre-petition Hinds County Action in the bankruptcy case. The Debtor's duty to disclose is absolute and is not contingent on whether the Debtor "has a colorable theory for why those assets should be shielded from creditors."[15] Once the disclosure is made, it is for the bankruptcy court to determine whether an asset is property of the bankruptcy estate.[16]

There is no question that the Hinds County Action, commenced in 2002, was pending at the time the Debtor filed bankruptcy in 2003. Moreover, the Confirmation Order in the case at bar did not vest property of the estate in the Debtor at confirmation. The Confirmation Order states that "[a]ll property shall remain property of the estate and shall vest in the debtor only upon dismissal, discharge, or conversion."[17] Since the Hinds County Action remained property of the estate post-confirmation, not only did the Debtor have a duty to disclose the Hinds County Action when he initially filed his bankruptcy petition, but the Debtor also had a continuing obligation to disclose the existence of the Hinds County Action post-confirmation.

Like the Debtor in the case before the Court, the debtor in *Flugence* had completed her plan

---

[15]*In re Flugence,* 738 F.3d at 130.

[16]*Id.*

[17]*Order Confirming the Debtor's Plan, Awarding a Fee to the Debtor's Attorney and Related Orders,* Case No. 0306146EE, Dkt. #12, p. 2, Jan. 7, 2004.

payments and had received a discharge, and the case was closed. Even so, the Fifth Circuit held in *Flugence* that the Chapter 13 trustee had standing to step into the shoes of the debtor and pursue the claim against the tortfeasors.

The bankruptcy court's application of *Flugence* in *In re Aycock*, No. 10-80516, 2014 WL 1047803 (Bankr. W.D. La. March 18, 2014) is instructive. In *Aycock,* the debtor filed a Chapter 13 petition in 2010. In April of 2011, the debtor was involved in an accident which resulted in a personal injury. In September of 2011, the debtor's plan was confirmed with a zero (0) payment to unsecured creditors. The debtor filed two (2) motions to modify his plan to increase the monthly plan payment to cure a post-petition arrearage and to pay a priority tax claim. The court ordered the debtor to amend his schedules to show that he had the income to fund the higher plan payment. The debtor failed to amend *Schedule I* and *Schedule J*, and his case was dismissed. A month later, the debtor filed a motion to reinstate his case and proposed to prepay the total amount due ($15,255.00) under his confirmed plan. The debtor also amended *Schedule B* to disclose a "postpetition accident" of "unknown value." The case was reinstated, and the debtor tendered $15,255.00 to the trustee in order to complete all of his payments pursuant to his confirmed plan.[18]

Several months later, the debtor filed a motion to ratify the settlement of his post-petition accident. The settlement agreement was entered into four months before the debtor amended *Schedule B* to disclose a "postpetition accident" of "unknown value." For the first time the motion to ratify the settlement disclosed that the debtor had settled his personal injury claim for $4.5 million and had received approximately $1.5 million in immediate funds. Upon discovery of the settlement,

---

[18]Pursuant to the confirmed plan, unsecured creditors were paid nothing on their claims.

the Chapter 13 trustee filed a motion to modify the plan pursuant to 11 U.S.C. § 1329(a)[19] to pay the unsecured creditors in full, approximately $65,000.00.

First, the court found that the trustee's motion to modify should be denied as untimely because it was filed well after the completion of all plan payments. "[I]f a debtor pays his plan balance and the trustee then seeks to modify the plan under § 1329 to account for newly-acquired funds, modification is not permitted." *Meza v. Truman (In re Meza),* 467 F.3d 874, 878 (5th Cir. 2006).

The court then analyzed *Flugence,* which involved similar pertinent facts, and found that in direct violation of *Flugence*, the debtor had clearly failed to adequately disclose the post-petition, post-confirmation asset he acquired. Unlike *Flugence*, no party asserted that judicial estoppel should apply, however, the court found that the debtor had a duty to disclose the asset so that it could be determined by the bankruptcy court whether it was property of the bankruptcy estate.

> [T]he failure of a debtor to make honest and accurate disclosures to the court, trustee and creditors carries implications beyond the possibility of judicial estoppel. Unlike in *Flugence,* where the debtor was merely silent as to the acquisition of post-petition cause of action, this debtor not only failed to adequately disclose the cause of action for more than two years, but blatantly contradicted its known value when he finally amended Schedule B to state "post petition accident" of an "unknown" value just four months after he signed a Settlement Agreement pursuant to which he was awarded over $4,000,000. Moreover, it seems disingenuous to assert in the amended motion to ratify the settlement that the $15,255 "would more than prepay the case balance of the Chapter 13 Bankruptcy" per the confirmed First Amended Plan (due to the withdrawal of the Third Modified Plan), as if such figure was happenstance, while the July 10, 2013 settlement discloses that the sum of $15,255 would be disbursed to "bankruptcy court." (Doc. # 78.) Such blithe disregard for the truth was recently grounds for the § 1306(a) *sua sponte* conversion in *In re Elliot,* 506 Fed. Appx. 291 (5th Cir. 1/7/2013), where the debtor misrepresented his own income, marital status, household size and failed to disclose his wife's income, information

_____

[19]Here after, all code sections refer to the Bankruptcy Code found at Title 11 of the United States Code unless specifically noted otherwise.

regarding his books, records, current and prior business interests.

*In re Aycock*, No. 10-80516, 2014 WL 1047803, at *3. (footnote omitted).

Malouf asserts that under § 1302,[20] the Trustee does not have the powers a Chapter 7 trustee

has under § 704(a)(1) and § 323 to sue and be sued.  The Court finds that it is bound by Fifth Circuit

precedent.  In *Aycock*, the court acknowledged that the Fifth Circuit's holding in *Flugence* creates

a quandary because it requires a Chapter 13 trustee to act outside of the authority that § 1302 grants

to a Chapter 13 trustee:

> Although the *Flugence* Court held that the trustee in a Chapter 13 case could pursue
> the post-petition acquired cause of action, it did so citing *Reed,* which dealt with a
> Chapter 7 debtor and the right of the Chapter 7 trustee to pursue the cause of action.
> There is an important distinction there that is not made, however, that is, that the
> enumerated powers of the Chapter 7 Trustee differ from those of the Standing
> Chapter 13 Trustee.  A Chapter 7 Trustee, under § 704(a)(1), § 323, and F.R.B.P.
> 6009 may "sue and be sued" and "the trustee stands in the shoes of the debtor and
> can only assert those causes of action possessed by the debtor.  [Conversely,] [t]he
> trustee is, of course, subject to the same defenses as could have been asserted by the
> defendant had the action been instituted by the debtor." *Hays & Co. v. Merrill Lynch,
> et al.,* 885 F.2d 1149, 1154 (3d Cir.1989), *citing* Collier on Bankruptcy, ¶ 323.02[4].
> The Chapter 13 Trustee though, under 11 U.S.C. § 1302, does not have the power
> under § 704(a)(1) to "reduce to money the property of the estate," does not "stand
> in the shoes of the debtor," and is specifically restricted from exercising control of
> property of the estate under 11 U.S.C. § 1303, particularly when § 1327(b) is
> applicable and the post-confirmation property of the estate vests in the debtor at
> confirmation.  So, although this Court follows the clear ruling of the 5th Circuit in
> *Flugence,* its practical application presents a problem in that it requires that a
> Standing Chapter 13 Trustee to act outside of the sphere of authority granted under
> § 1302.  Nevertheless, the possibility of conversion in this particular case, discussed
> *infra,* would moot the implications of this distinction.[21]

In order to avoid the quandary the *Flugence* opinion created, the *Aycock* court entered an

---

[20]Additional language has been added to § 1302 since 2003, however, the substance of the section
remains unchanged.

[21]*In re Aycock*, 2014 WL 1047803, at *2 n.  1.

order to show cause why the debtor's case should not be converted to a Chapter 7.  Likewise, this Court will follow the Fifth Circuit's very clear ruling in *Flugence*, and find that the Trustee has standing to pursue the claim against Malouf.  In order to avoid any possible conflict with § 1302 and § 1303,[22] this Court, like the *Aycock* court, will also enter a separate order to show cause as to why the above-styled case should not be converted to a Chapter 7.[23]  Consequently, the Court finds that Malouf's request to dismiss the Complaint pursuant to Rule 12(b)(1) lacks merit and should be denied.

### III.  Rule 12(b)(6)

Rule 8(a) of the Federal Rules of Civil Procedure[24] requires that a complaint set forth "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). In addition, subsection (d)(1) supplements subsection (a) by requiring that "each allegation must be simple, concise, and direct."[25]  "Rule 8 tests the sufficiency of the pleading rather than the sufficiency of the cause of action or claims asserted therein." *Scheidelman v. Henderson (In re Henderson),* 423 B.R. 598, 612 (Bankr. N.D.N.Y. 2010).  While the movant is not required to give detailed statements of fact, the movant must plead something more than mere conclusory statements

---

[22]The current version of § 1303 is the same as the 2003 version.

[23]As noted by the *Aycock* court, the Supreme Court of the United States discussed the duty of a bankruptcy court to respond to a dishonest debtor.  The Supreme Court acknowledged that "[o]ur decision today does not denude bankruptcy courts of the essential 'authority to respond to debtor misconduct with meaningful sanctions.'" *Law v. Siegel,* — U.S. —, 134 S.Ct.  1188, 1198 (2014) (citation omitted).

[24]Federal Rule of Civil Procedure 8 is made applicable to bankruptcy proceedings pursuant to Federal Rule of Bankruptcy Procedure 7008.  For purposes of this Opinion, the Court will refer to Rule 7008 as Rule 8.

[25]Fed. R. Civ. P. 8(d)(1).

or "unadorned, the-[debtor]-unlawfully-harmed-me accusation[s]." *Ashcroft v. Iqbal,* 556 U.S. 662, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009).[26]   "A pleading that offers nothing more than 'threadbare recitals of the elements of a cause of action,' without supporting factual allegations, will not suffice. [*Iqbal*] at 1950 (*citing Twombly,* 550 U.S. at 555, 127 S.Ct. 1955)."   *Henderson,* 423 B.R. at 612.

If a complaint does not meet the standards of Rule 8, Rule 12(b)(6) provides the avenue for dismissal of a complaint for "failure to state a claim upon which relief can be granted."[27]   In addressing a Rule 12(b)(6) motion to dismiss in *McCoy v. Mississippi State Tax Comm. (In re McCoy),* Adv. No. 08-00175EE, 2009 WL 2835258 (Bankr. S.D. Miss. Aug. 31, 2009), this Court held:

> The pleading standards that apply to a Rule 12(b)(6) motion to dismiss arise out of the requirement in [Fed. R. Civ. P.] 8(a)(2) that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  In *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544 (2007), the Supreme Court explained that to survive such a motion, the plaintiff must plead "enough facts to state a claim to relief that is plausible on its face."  *Id.* at 570.  In *Twombly* the Supreme Court revisited the often-quoted language in its decision in *Conley v. Gibson,* 355 U.S. 41 (1957), that a complaint should not be dismissed at the pleading stage "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim," *Id.* at 45-56, and concluded that courts had interpreted the "no set of facts" language too literally.  *Twombly,* 550 U.S. at 561-62.
>
> More recently, in *Ashcroft v. Iqbal,* 129 S.Ct. 1937 (2009), the Supreme Court described application of the "plausibility" standard in *Twombly* as a two-part analysis.  First, a court should begin by identifying those allegations in the complaint that, unlike non-conclusory, factual allegations, are not entitled to the assumption of truth.  *Iqbal,* 129 S.Ct. at 1949-50.  A pleading that includes "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do."  *Twombly,*

---

[26]Some courts refer to the *Ashcroft v. Iqbal* opinion as *Ashcroft*, while other courts refer to it as *Iqbal*.  For purposes of this Opinion, the Court will use *Iqbal.*

[27]Fed. R. Civ. P. 12(b)(6).

550 U.S. at 555.  Second, a court should determine whether the non-conclusory factual allegations in the complaint plausibly suggest a claim for relief.  *Iqbal,* 129 S.Ct. at 1950.  Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact).  *Twombly,* 550 U.S. at 555.  Although  Rule 8 does not require "detailed factual allegations," a complaint must provide the plaintiff's grounds for entitlement to relief–including factual allegations that when assumed to be true, nudge the claim across the line from conceivable to plausible.[28]

In affirming this Court's decision in *McCoy,* the Fifth Circuit stated that the court's task was "to determine whether the plaintiff has stated a legally cognizable claim that is plausible, not to evaluate the plaintiff's likelihood of success.  In other words, we look to see whether McCoy's pleadings, including her legal arguments, plausibly state a claim that her tax debt should be discharged pursuant to § 523(a)."  *In re McCoy,* 666 F.3d  at 926 (citations omitted).

"The 'plausibility' test is met only where 'the plaintiff pleads *factual* content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.' *Darby v. Southern Care, Inc.,* 2010 WL 4168671, at *1 (N.D. Miss. Oct. 19, 2010)(emphasis added)." *Thorne v. Prommis Solutions Holding Corp. (In re Thorne),* Adv. No. 10-01172, 2011 WL 2496217, at *2 (Bankr. N.D. Miss. June 22, 2011).  "We accept well-pleaded factual allegations as true and interpret the complaint in the light most favorable to the plaintiff, *Spicer,* 761 F.3d at 365, but '[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements' cannot establish facial plausibility. *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009)." *Snow Ingredients v. Snowizard, Inc.,* No. 15-30393, 2016 WL 4363181, at *3 (5th Cir. Aug. 15, 2016).

Therefore, this Court will look to see whether the Trustee's factual allegations in his

_____

[28]*In re McCoy,*  2009 WL 2835258, at *4-5, *aff'd,* 3:09-cv-575, 2011 WL 8609554 (S.D. Miss. Feb. 8, 2011), *aff'd,* 666 F.3d  924 (5th Cir. 2012).

Amended Complaint plausibly state a claim that: (Count One) the settlement is unenforceable because Malouf was not authorized pursuant to § 327 to represent the Debtor, the Debtor failed to list the Hinds County Action as required by § 521, and/or the settlement was not approved by the Court pursuant to Rule 9019; and (Count Two) Malouf should be required to turnover to the Trustee all of the funds Malouf received from the settlement of the Hinds County Action pursuant to § 542.[29] The Court considers the statutes and rule cited by the Trustee separately below.

### A. § 327[30]

The Trustee alleges that because the Court did not enter an order authorizing the Debtor to employ Malouf as special counsel pursuant to § 327, any settlement Malouf reached on behalf of the Debtor "is unenforceable, null, void and of no effect."[31]

The Court finds that a Chapter 13 debtor does not have to seek approval to hire special counsel. Section 327 applies to a trustee, and the Code does not impose the duties and functions of a trustee on a Chapter 13 debtor. *In re Powell,* 314 B.R. 567, 569-70 (Bankr. N.D. Tex. 2004); *In re Jones,* 505 B.R. 229, 233 (Bankr. E.D. Wis. 2014) ("Nothing in the Code supports [the trustee's] conclusion that 'trustee' in § 327 included chapter 13 debtors."). Consequently, the Court finds that the Trustee's claim that Malouf was not authorized under § 327 to represent the Debtor in the Hinds County Action is not plausible and should be dismissed.

Regardless of the inadequacies of the Amended Complaint with regard to § 327, the Court,

---

[29]*Complaint for Turnover of Property, Declaratory Judgment and Equitable Relief,* Adv. Case No. 1500051EE, Dkt. #7, p. 7, Aug. 6, 2015.

[30]This case was filed in 2003, however, the substance of the current version of § 327 is the same as in 2003.

[31]*Complaint for Turnover of Property, Declaratory Judgment and Equitable Relief,* Adv. Case No. 1500051EE, Dkt. #7, p. 7, Aug. 6, 2015.

however, has "an independent duty to review the reasonableness of the fees of any professional."[32]

Other provisions of the Bankruptcy Code charge the Court with the duty to examine the attorney's

fees of a Chapter 13 debtor's special counsel, and special counsel may only recover fees from the

bankruptcy estate if the fees are approved by the Court.

> None of this entails that a chapter 13 debtor's special counsel is free from bankruptcy-court oversight. As the trustee here argues, special counsel who represent the chapter 13 debtor "in connection with" a case under Title 11 are regulated by § 329; they must "file with the court a statement of the compensation paid or agreed to be paid . . . and the source of compensation." 11 U.S.C. § 329(a). Their compensation is also subject to court approval under § 330.

*In re Jones,* 505 B.R. at 233.

Section 330(a)(4)(B)[33] specifically applies to a Chapter 13 case. Under § 330(a)(4)(B), the

Court must review compensation of an attorney "for representing the interests of the debtor in

connection with the bankruptcy case." 11 U.S.C. § 330(a)(4)(B). "'[I]n connection with the

bankruptcy case' must be read liberally to include attorney work for a debtor that could have a

conceivable effect on the Chapter 13 case while a debtor prosecutes a Chapter 13 case." *In re*

*Powell,* 314 B.R. at 571; *see also In re Hebert, Jr.,* Case No. 14-30559, 2015 WL 5813438, at *3

(Bankr. W.D. La. Oct. 5, 2015).

Malouf asserts that it has a "charging lien" on the settlement proceeds, and therefore, the

attorneys' fees and expenses were never property of the Debtor. Malouf is misguided in this belief.

Even if Malouf has some type of lien on the settlement proceeds, "[t]he existence of a lien against

---

[32]*In re Lexington Hearth Lamp & Leisure, LLC.,* 402 B.R. 135, 139 (Bankr. M.D. N.C. 2009) (footnote omitted).

[33]This case was filed in 2003, however, the substance of the current version of § 330(a)(4)(B) is the same as in 2003.

property does not exclude the property from the estate; the debtor has an interest in property and the property becomes property of the estate, subject to the lien." *Havis v. Norman (In re Equator Corp.)*, 362 B.R. 326, 332 (Bankr. S.D. Tex. 2007).

Consequently, the Court finds that Malouf was not required to have its representation of the Debtor approved under § 327, and therefore, the Trustee's claim that the settlement is unenforceable for that reason should be dismissed. That does not, however, exempt Malouf from bankruptcy court oversight. *In re Scott,* 531 B.R. 640, 645 (Bankr. N.D. Miss. 2015). The Court finds that pursuant to § 329, Malouf was required to file an application with the Court disclosing its compensation and to obtain Court approval of its compensation under § 330.[34] Malouf did neither. Consequently, until Malouf complies with § 329 and § 330, Malouf is not entitled to any attorneys' fees and expenses.[35]

### B. § 521[36]

The Court finds that the Trustee has met its burden to prove a plausible cause of action under § 521, and therefore, the Motion should be denied. The parties do not dispute that the Debtor filed the Hinds County Action prior to the date the Debtors filed their Chapter 13 case. Consequently, pursuant to § 541, there is no question that the Hinds County Action was property of the Debtor's bankruptcy estate and that pursuant to § 521(a)(1)(B)(I), the Debtor had a duty to disclose the Hinds County Action when he filed his petition.

---

[34]The substance of the current version of §§ 329 and 330 are the same as in 2003.

[35]The Court passes no judgment on whether Malouf may be approved as special counsel for the Debtor and have its attorneys' fees approved *nunc pro tunc*. Nor does the Court pass judgment on whether Malouf's attorneys' fees were reasonable and should be allowed. *Fanelli v. Hensley (In re Triangle Chems., Inc.)* 697 F.2d 1280, 1289 (5th Cir. 1983).

[36]The sections of § 521 have been reordered since 2003, however, the substance of the code section remains unchanged.

"[T]he Bankruptcy Code and Rules impose upon bankruptcy debtors an express, affirmative duty to disclose all assets, including contingent and unliquidated claims." *Browning Mfg. v. Mims (In re Coastal Plains, Inc.)*, 179 F.3d 197, 207-08 (5th Cir. 1999) (emphasis omitted). "Estate property includes causes of action belonging to the debtor at the commencement of a bankruptcy case. *Am. Nat'l Bank of Austin v. MortgageAmerica Corp. (In re MortgageAmerica Corp.)*, 714 F.2d 1266, 1276 (5th Cir. 1983)." *In re Noram Res., Inc.*, No. 08-38222, 2015 WL 2265405, at *6 (Bankr. S.D. Tex. May 11, 2015). "Moreover, 'the integrity of the bankruptcy system depends on full and honest disclosure by debtors of all of their assets.'" *Love v. Tyson Foods, Inc.,* 677 F.3d 258, 261 (5th Cir. 2012) (citation omitted).

Malouf asserts that when the Debtor received his discharge, the undisclosed Hinds County Action revested in the Debtor. The Court disagrees. Section 554(d)[37] provides that "[w]here there is an undisclosed asset of the estate that was not administered or abandoned by the trustee, the claim remains property of the estate and may be administered when the case is reopened. *In re Texas Wyoming Drilling, Inc.,* 422 B.R. 612, 633 n. 25 (Bankr. N.D. Tex. 2010)."[38] "While properly scheduled estate property that has not been administered by the trustee normally returns to the debtor when the bankruptcy court closes the case, undisclosed assets automatically remain property of the estate after the case is closed." *Chartschlaa v. Nationwide Mutual Ins. Co.,* 538 F.3d 116, 122 (2d Cir. 2008) (citations omitted).

The court in *Consumer Portfolio Servs., Inc. v. Coleman (In re Coleman)*, No. 04-70048,

---

[37]The 2003 version of § 554 is identical to the current version of § 554.

[38]*In re Johnson,* No. 05-38147BJH, 2010 WL 3491187, at * 2 (Bankr. N.D. Tex. Sept. 2, 2010).

2007 WL 1526651 (Bankr. N.D. Ala. May 24, 2007), first found that § 554 "is applicable to Chapter 13 cases as well as Chapter 7."[39]   The court then addressed the question of whether § 1327(b) applied equally to known and unknown property.  Like the case at bar, the confirmation order in *Coleman* delayed the vesting of property in the debtor until discharge.  In finding that § 1327(b) did not apply to undisclosed property, the *Coleman* court held:

> To interpret Section 1327(b) to mean that undisclosed property revests in a Chapter 13 debtor at discharge would have the effect of making Section 554(d) inapplicable in Chapter 13 cases.  That is not what Congress chose to say in the statutes.  This court finds that this postpetition cause of action . . . remained property of the estate when the case was closed.

*In re Coleman,* 2007 WL 1526651, at *7.

The Court finds that pursuant to § 521, the undisclosed Hinds County Action was property of the Debtor's bankruptcy estate.  Upon discharge, the undisclosed Hinds County Action remained property of the Debtor's bankruptcy estate pursuant to § 554(d) even though the Debtor's case was discharged and closed.

### C.  Rule 9019[40]

"A bankruptcy court may approve a compromise settlement of a debtor's claim pursuant to Bankruptcy Rule 9019(a).  However, the court should approve the settlement only when the settlement is fair and equitable and in the best interest of the estate. *Jackson Brewing Co.,* 624 F.2d at 602; *U.S. v. AWECO (In re AWECO),* 725 F.2d 293, 298 (5th Cir.), *cert. denied,* 469 U.S. 880, 105 S.Ct. 244, 83 L.Ed.2d 182 (1984)." *Conn. Gen. Life Ins. Co. v. United Cos. Fin. Corp. (In re Foster Mortg. Corp.)*, 68 F.3d 914, 917 (5th Cir. 1995).

---

[39]*In re Coleman,* 2007 WL 1526651, at *6.

[40]The 2003 version of Rule 9019 is identical to the current version of Rule 9019.

In the case at bar, the Court was unable to determine whether "the settlement was fair and equitable and in the best interest of the estate"[41] because the Debtor failed to disclose the existence of the Hinds County Action and failed to disclose that while his Chapter 13 case was pending, he settled the Hinds County Action.  Consequently, the Trustee has a plausible cause of action that the Debtor and Malouf violated Rule 9019 by settling the Hinds County Action without Court approval.

### D.  § 542[42]

The Trustee seeks a turnover of the settlement funds from Malouf pursuant to § 542.  Under § 542, anyone in possession, custody, or control of property that the trustee may use, sell, or lease under § 363 must deliver such property to the trustee.  Malouf contends that the Trustee lacks statutory standing to invoke § 542.  The rights and powers of a Chapter 13 debtor are found in § 1303.  Pursuant to § 1303, a Chapter 13 debtor is vested with the powers of a trustee under § 363(b).[43]  Section 363 pertains to the use, sale, or lease of property of the estate.  Subsection (b) provides that the trustee has the authority to use, sell, or lease property of the estate.  Consequently, and as this Court has held previously,[44] a Chapter 13 debtor has the exclusive right to use and to control property of his or her estate and to seek turnover of estate property.  *Seigfried v. Board (In re Seigfried)*, No. 14-12381, 2014 WL 7240071, at *4 (Bankr. D.N.M. Dec. 19, 2014) ("[I]n Chapter 13 cases debtors have the exclusive right to use and control estate property and seek turnover."); *In*

---

[41]*In re Foster,* 68 F.3d at 917.

[42]The 2003 version of § 542 is identical to the current version of § 542.

[43]The sections of § 363(b) has been reworded since 2003, however, the substance of the section remains unchanged.

[44]*In re James,* 210 B.R. 276, 278 (Bankr. S.D. Miss. 1997) ("[A] Chapter 13 debtor may sue and be sued, and . . . the Chapter 13 debtor 'controls whether and on what terms to settle the lawsuit.'")

*re Hutchinson,* 354 B.R. 523, 533 (Bankr. D. Kan. 2006) (Chapter 13 trustee cannot compel turnover of estate property.)

Because of the possibility that the above-styled case will be converted to a case under Chapter 7, discussed *infra,* the Court will not dismiss the Trustee's request for turnover of settlement funds at this point in time. If the case is converted to a Chapter 7, the Chapter 7 trustee clearly has the authority under § 542 to require Malouf to turnover the funds to him or her.

### IV. § 1325[45] and § 1329[46]

In *In re Stretcher,* 466 B.R. 891 (Bankr. W.D. Tex. 2011), the debtors' plan was confirmed with a 17% distribution to unsecured creditors. Post-confirmation, the debtors filed an application to employ special counsel and a motion to approve the settlement of a pre-petition cause of action. After they received the net proceeds of the settlement, the debtors attempted to modify their plan pursuant to § 1329 to make a lump sum payment to the trustee for the benefit of the unsecured creditors, while continuing to make the originally scheduled monthly plan payments. The lump sum payment constituted only a small percentage of the net settlement proceeds and would not pay the unsecured creditors in full.[47]

Before a plan can be confirmed, a debtor must satisfy the liquidation analysis found in § 1325(a)(4) and the disposable income test found in § 1325(b)(1). The issue before the *Stretcher*

---

[45]The sections of § 1325 have been reworded since 2003, however, the substance of the code section remains unchanged.

[46]Additional language has been added to § 1329 since 2003, however, the substance of the section remains unchanged.

[47]How the debtors arrived at the figure they proposed to pay to the trustee is not relevant to this discussion but involved a calculation based on the current liquidation value of the debtors' non-exempt property.

court was whether a debtor must satisfy both the liquidation analysis and the disposable income test when attempting to modify a plan post-confirmation.  The *Stretcher* court, following the minority view, answered this question in the affirmative.  Accordingly, the court held that all of the net settlement funds constituted additional disposable income and must be paid into the plan.

The *Stretcher* decision is an example of what would have occurred if the Debtor had properly disclosed the Hinds County Action, and then subsequently, disclosed the settlement of the Hinds County Action.  When the Debtor failed to disclose the Hinds County Action, the Debtor deprived the Trustee, his unsecured creditors, and the Court of the opportunity to examine the settlement and determine whether the Debtor's plan should be modified to pay all or a portion of the settlement to his unsecured creditors.   As the *Stretcher* court held:

> Chapter 13 should not be used as a way to play games with the creditors.  The suit was not listed in the original schedules, so it was not considered when the plan was proposed.  The proceeds of the suit are property of the bankruptcy estate and, as such, should be used to pay the creditors of this estate.

*Id.*  at 897, n. 8.

## CONCLUSION

It is clear that the Hinds County Action was filed pre-petition and was property of the Debtor's bankruptcy estate.  It is also undisputed that not only did the Debtor fail to disclose the Hinds County Action in his Schedules and Statement of Financial Affairs, but he also failed to disclose the settlement of the Hinds County Action while his Chapter 13 case was pending.

The Court finds that based upon the Fifth Circuit's holding in *Flugence*, the Trustee has standing to pursue the claim against Malouf.  Consequently, Malouf's request to dismiss the Amended Complaint pursuant to Rule 12(b)(1) should be denied.

Malouf also asserts that the Amended Complaint should be dismissed pursuant to Rule

12(b)(6).  The Trustee's claim that because Malouf was not approved as special counsel for the Debtor pursuant to § 327, and therefore, was not authorized to settle the Hinds County Action is without merit.  Therefore, the Court finds that Malouf's Motion to Dismiss as to § 327 should be granted.

This does not mean, however, that Malouf was free from Court oversight.  Pursuant to §§ 329 and 330(a), the Court has a duty to examine Malouf's attorneys' fees, and Malouf is only entitled to collect attorneys' fees upon Court approval.  Consequently, until Malouf complies with § 329 and § 330, Malouf is not entitled to attorneys' fees and expenses.

The Court further finds that the Trustee has met his burden to prove a plausible cause of action under § 521, and therefore, Malouf's Motion to Dismiss should be denied.  Further, the Trustee has met his burden to prove a plausible cause of action that the Debtor and Malouf violated Rule 9019 by settling the Hinds County Action without Court approval.

As for § 542, the Court finds that a Chapter 13 trustee does not have the authority to compel the turnover of the Settlement Funds.  The Court does find, however, that a Chapter 7 trustee clearly has the authority to require the turnover of the settlement funds pursuant to § 542.  At this point, the Court will not dismiss the Trustee's turnover request pursuant to § 542, but will defer ruling on that issue pending its decision on whether this case should be converted to a Chapter 7.

"'A debtor may not conceal assets and then, upon termination of the bankruptcy case, utilize the assets for [his] own benefit.'"[48]  This is exactly what the Debtor in this case did.  Even when the Debtor's wife reopened the case to disclose the settlement of her cause of action, the Debtor's

---

[48]*Chartschlaa v. Nationwide Mutual Ins. Co.,* 538 F.3d 116, 122 (2d Cir. 2008), *cert. denied*, 555 U.S. 1213 (2009) (citation omitted).

settlement was not disclosed to the Court, the Trustee, or the Debtor's unsecured creditors. This Court will not permit a dishonest debtor to reap a windfall by failing to disclose a cause of action.

To the extent the Court has not addressed any of the parties' other arguments or positions, it has considered them and determined that they would not alter the result.

A separate judgment consistent with this Opinion will be entered in accordance with Rules 7054 and 9021 of the Federal Rules of Bankruptcy Procedure.

**##END OF OPINION##**